Jr., arguments not to exceed 15 minutes per side. Missed list for petitioner. May it please the court, my name is Maris Liss and I would like to reserve three minutes for rebuttal. You may. The Abdelghani saga rivals the story of Jarndus and Jarndus. It goes back to 2003 and there have been five board decisions which is rather unusual. Two were in 2008. First the prior council appealed and lost. And then I did a motion to reopen which was granted. Then there were three decisions in 2012. Two were before this court. One from March 23rd where the appeal was dismissed. One from August 27th where the motion to reopen was denied. And then there was also a decision denying a motion for a stay November 5th of 2012. That decision is not technically before the court but it is part of the certified record and it has an interesting bit of information in it in the footnote which says that the court did not consider Exhibit P when they were ruling on the motion to reopen which I argue is an important piece of information. First I'm going to summarize the five parts of relief that Mr. Abdelghani seeks and then I will highlight three points that the respondent's brief is completely silent on. At some point I would suggest you talk about whether the petition is moot. Unless I'm mistaken the government is saying that your client has left the United States to go teach in Saudi Arabia in which case under regulation his application is abandoned. Well for one thing a person is not required to apply for advanced parole. In fact they're not eligible for advanced parole when they have an order of removal against them. That means he shouldn't leave right? No. He didn't want to leave to go to Lebanon because he was afraid to go to Lebanon. However he does have to support himself. He doesn't have permission to work in America. The case is very long and he is allowed to pursue his appeal when he is abroad. He's not required to stay and the Supreme Court of course in the Ken has said that there's an interest in executing removal orders. Here Mr. Abdelghani the alien executed his own order. He is absolutely allowed to do that. Also there is more to the appeal than the asylum application which I guess would be the motion to reopen. What he wants is for the frivolous finding to be vacated and he cannot get a green card based on his relationship to his father while there is a frivolous finding. That's a crucial part of your appeal here really. Yes. And that's not abandoned under the section that the government cites. Right and if he won his appeal and he was able to come back then he would be able to adjust his status and probably what the court would do is terminate without prejudice or administratively close the case so that USCIS, the Citizenship and Immigration Service would administratively take care of the case. Adjustment of status. Right now they're scheduling hearings in 2017 and that helps alleviate the docket and that's also why we hope that you will reverse the frivolous finding outright rather than send the case back for more hearings which probably won't take place for three years. So a summary of the five things that we're asking for is respectfully we ask the court to vacate the frivolous finding outright either based on ineffective assistance of counsel or the egregious error of the prior attorney which I discussed in a recent letter of supplemental authority to you. Second, if you do remand the case so Mr. Abdel Ghani may testify on his own behalf and his father may testify as they were ready, willing and able to do at the last hearing regarding ineffective assistance of counsel and the egregious error. That would be the second relief. The third of five is that evidence compels a finding that the denial of the motion to reopen was manifestly contrary to law because we know for a fact that the board did not consider the whole motion. Now there was two problems. One is that the board said that the affidavits were not credible and because of Abdel Ghani's prior credibility problems they were going to weigh it very little. But he never had the opportunity to rehabilitate his credibility by testifying on his own behalf. His father did not have the opportunity to testify. In that remand proceeding you're talking about? Yeah, in that remanded proceeding. So therefore because he didn't have the due process of being able to try to rehabilitate his credibility the board should not have placed less weight on the affidavits. Just a second. The way I understand this, those affidavits could have been submitted at the time of the first hearing. His father could have testified at the time of the first hearing and that didn't happen. What we have is testimony by him at the first hearing which is contradictory and no other evidence presented. So it's hard to say that the IJ's finding of basically deliberate misstatements is not supported. What, for example, Mr. Abdel Ghani's affidavit contain is several points on how his attorney failed him and how he was not given proper counsel. For example, he said in his affidavit that Mr. Ayad sent his father away because he hadn't prepped him. That's on page 765 of the record. Well, that's not something that would have come up at the hearing. That is something that he's telling about afterwards. That doesn't go to whether he told the truth at various points, which was the IJ's point. Unless you say the counsel didn't tell him to tell the truth, then if he had he would have. No. There's a difference between being inconsistent, making mistakes, confounding things, and actually making a knowing and deliberate false statement that constitute the extremely severe sanction of frivolous finding. So I think that he might have rehabilitated himself from frivolous to just merely not credible. But how does incompetence of counsel address that? I will tell you. The attorney filed on October 8, 2004, a withholding application. He was completely flustered in July of 2006 when the judge got the priority dates confused. And then suddenly, instead of calling it a withholding application, which is what was filed, and a person literally cannot have a frivolous finding attached to a withholding application. There's only one application. Asylum and withholding. There's no two pieces of paper. Correct? Because the withholding would be based on similar things. Persecution, right? So that's why they provide one piece of paper and there's different standards for the two relief, but there's only one piece of paper. It's asylum and withholding. So unless he crosses out asylum, he's asked for asylum. The way that it works is that you file one application for either relief, but you make a declaration of what you're applying for. And he declared on October 8, 2004, that he was applying for withholding of removal. And then when he was flustered and he got them mixed up, which is really not an uncommon mistake, he suddenly was sort of talking at it more colloquially as asylum. Suddenly the judge is giving frivolous warnings. I assert that it was an inadvertent error that came up and that there was no discussion with my client about whether he is planning to change his application from withholding to asylum. Or, I mean, isn't it more accurate to say change his application that says asylum and withholding to withholding only? Well, when my client was sitting in the courtroom, he heard his attorney say he was filing a withholding application. I mean, when he signed the application, doesn't it have the asylum kind of warnings on it? It has warnings, but he was not really, you know, as a lay person, and immigration law is extremely confusing, I think it would be too much to put it on him that he understands the subtlety. It wasn't told to him, oh, and by the way, with withholding, you don't have a frivolous warning. I mean, as far as he was understanding, he was just being told that he has to tell the truth. And I also just want to mention that he left Lebanon when he was 17 years old. So whatever happened to him, you know, happened to him when he was a teenager. And I think that, you know, it's very, you know, possible that he might have explained that he had bad memory. What I have is, I might sit here and say, I read this transcript and I think the man was just confused. But can I say that the IJ isn't correct in saying the evidence can't tell the IJ that he kept saying he was from the small town because that was the town where the grandfather was the mayor. That was the town where the family had control of the telephone system. That was the town where the connection with the Israelis was alleged. So he associated himself purposely with that town when, in fact, he had never lived in that town. That's what the IJ concludes. I may not conclude that. But how do I say the IJ can't conclude that from hearing this man say, I lived in that small town when his application says he lived in the large town of Said or Saida. And, in fact, later on he's consistent in saying that's where I'm really from. Okay, I have two responses. One is that the judge should have given Mr. Abdelghani an opportunity to testify about it and explain it. And that's what the problem is. That's the due process problem that the case was sent back to flesh out an issue and he and his father were not permitted to testify. When you said it was remanded to flesh out an issue, wasn't that issue ineffective assistance of counsel? Correct. And how would you get back to how whether you were telling the truth or not relates to the ineffective assistance of counsel? Well, he would be able to testify about what his intent was. In order to have a frivolous finding there has to be knowing and material. Well, was it knowing? I don't know. He never got to testify. You know, I come from Silver Spring, Maryland, but I often tell people I'm from D.C. if I'm out of town because people know Silver Spring. Counsel, I think your time's expired. So it might be the same. Thank you. I'm going to save your rebuttal time. Thank you. You have three minutes for rebuttal. Good afternoon. May it please the Court, Rebecca Nahas for the United States Attorney General. An asylum application is frivolous if any of its material elements is deliberately fabricated. Under this Court's precedent in Siraj v. McKaysey, even one material deliberate fabrication is sufficient to justify a frivolous finding. Here, substantial evidence supports the agency's frivolous findings for three reasons. One, Petitioner testified inconsistently about basic biographical facts. Two, he failed to provide an adequate explanation for this inconsistency. And three, he made a statement that the agency reasonably interpreted as an admission that his claim was fabricated. With respect to number two, when you say he was unable to explain this, is that at the original hearing? Was he given a chance to explain it? Yes, Your Honor. In the original hearing, the immigration judge warned him that he believed that he might make a frivolous finding based on the inconsistent testimony he provided. So he gave the Petitioner warning of that and then asked him to explain the inconsistency. And he asked him repeatedly in many different ways, yet Petitioner failed to adequately explain the inconsistency. In fact, he made matters worse. Initially, he testified that he got his application wrong and that he just didn't know where to put what information. Later, he changed his testimony and said, no, actually, I did live in Seda, as indicated in my application. I just got my testimony wrong. So we have inconsistent explanations, even when provided an opportunity to explain the inconsistency. By the time the first hearing was over, had he stated clearly to the IJ that, yes, I'm from Seda? So, yes, Your Honor. Okay, so by the time that that hearing was over, he basically testified to something which now appears true. The man was from Seda. And it was during the interim in that case, it appeared that he was saying that he was from that smaller town by the border, correct? That's right, Your Honor. All right. So once he said, yes, indeed, I'm from Seda, then what happens? Well, Your Honor, what happens is that we don't believe his story, and that's a reasonable position. After he says, we have the story in the middle that seems to be not true, and then at the end of the hearing he says, yes, I am from Seda. And at that point, does the immigration judge say to him, why did you say Seda? Why did you say the other story? Yes, the immigration judge did ask him that, and he just was not able to provide a coherent explanation. He said, I made a mistake in my application. Well, his application says he's from Seda. No, no, that's when we're in phase one of the misstatement. He says, I made a mistake in the application, I'm really from this small town. And then later on he says, you're saying, by the end of the first hearing he's saying, I'm from Seda, just like in my application. And then what happened? And then the immigration judge asked him, well, why did you initially say that you were from Kesher Fila, and that the pharmacy was located in Kesher Fila? And at that point, he gave a speech about how he deserved to stay in the country, and then he ended his speech with a statement that, I'm doing all of this because I want to stay here. Right, which then the IJ interprets as, everything is, I lied. That's how he interprets that statement. Yes, Your Honor, the agency reasonably interpreted that statement as an admission that he had fabricated his claim, given the context in which it was made. I would agree if he had just said it out of the blue, it wouldn't necessarily take on that meaning, but he was repeatedly asked by the immigration judge to explain the inconsistency. You know, it's like several minutes, several pages in the transcript, and he just couldn't, and then he ended with this statement. And so I think given the context in which it was made, it was a reasonable interpretation. And, you know, we also have that it was an inconsistency about a basic biographical fact. We also have insufficient explanation, and we have the admission. So we have three pieces of substantial evidence that supports the agency's claim. Counsel, just to be clear on this, if it's called a frivolous application, and let's suppose that the truth is that the application was correct, or at least wasn't erroneous. He testified full of lies, and then at the end he repudiates the testimony, saying, oh, I only did all that because I want to stay in the country. Is it still a frivolous application? Yes, Your Honor, because his testimony, which is inconsistent with his application, makes his application also frivolous. Because in his application he stated that his family is from Keshavela, his grandfather was mayor of that town, and that there were certain incidents that happened in that town. And it also says that he was born and raised in Seda. And so we have inconsistent information in the application, and once he provides inconsistent testimony, we don't know what to believe. And that's where the frivolous finding comes in. Well, you may not know what to believe, but it seems to me if you're going to find that it was frivolous, you have to find that the application was frivolous. And I think what Judge Boggs is asking you is, does the hearing become part of the application? Yes, it does. The testimony fills in the application. And so when we speak about an asylum application, it's the written application as well as the testimony. That makes sense. Do you have a citation, a case, or a regulation that would support that? Well, Your Honor, I mean, I think we would compare it to adverse credibility, something the court probably has seen often. In adverse credibility cases, we look at the testimony in addition to the application, and it's sort of a common practice that the entire, both things are looked at. Frivolousness, jurisprudence has to be a bit different because it is so final. And I think if the statute is being interpreted, I would think that the BIA would have interpreted the statute before and said what the application consists of. And you don't seem to know of any case. Unfortunately, I don't know off the top of my head, but I'm happy to supplement the court with that if I find anything after this. And I just had a question about what the final decision on the application actually is. The original asylum application? In the statute, I want to know what the final decision is in the words of the statute. I'm sorry, I don't understand that. I guess I'll better find the statutory site. Okay, sorry, I'll find it. I'm sorry, Your Honor. And I just want to point out that in this court's precedent, Siraj V. McKaysey, the court found that one omission was sufficient to justify a frivolous finding. That was an omission in the application? Yes, Your Honor. In that case, a petitioner testified or indicated in his third asylum application and testified in immigration court that he was mistreated due to listening to prohibited radio stations. But he left out that information in his first and second applications. And he explained that his translator must have left it out by accident. Well, no one bought it, and the court upheld the frivolous finding there. And I think we have more in this case where a petitioner made a statement that was reasonably interpreted as an admission that he had lied. Turning to petitioner's argument that he only filed a withholding application, the argument's meritless for several reasons. First of all, factually, he applied for asylum. During the pleadings... I'm sorry, it's in Section 6, frivolous applications. If the attorney general determines that an alien is knowingly made a frivolous application or asylum, da-da-da, the alien shall be permanently ineligible for benefits under this chapter effective as the date of the final determination on such application. So I wanted to know what the final determination on the asylum application was. What is that date? It would be when the board affirms the frivolous finding. Okay, so it's when the BIA affirms. Okay. So going back to whether petitioner applied for asylum or withholding, factually he applied for asylum. In the pleadings, former counsel requested asylum, withholding, and cap protection. And throughout removal proceedings, he referred to an asylum application. He referred to an asylum hearing. In fact, petitioner in his own handwriting indicated why he filed his application untimely. He said that he was here in school and he was hoping things would get better in Lebanon. And so I think that also indicates his intention of actually applying for asylum and not just withholding. If there's such a thing as only applying for withholding, as your honors pointed out, the application of Form I-589 is a unitary application. There's no mechanism to apply for withholding alone. Moreover, sorry. If I can ask you a question. In your view, is the asylum application standing alone? Just forget about the testimony. Frivolous. The written application? Yeah. I don't think you can look at it separately because given what he said in his testimony, I believe that his application is now frivolous because we don't know. But you have to take my hypo on its terms. Was it frivolous when it was filed? Yes, because the finding is that he made a deliberate fabrication. And so it must have been fabricated from the beginning. And it's frivolous specifically why? What in the application is the deliberate fabrication that you'd point to that renders it frivolous? The fact that he said that his father's pharmacy was bombed three times. That's what was fabricated. Does the application specify where the pharmacy was? I don't know off the top of my head. I know that he does say his grandfather is from Keshefila. Do we have a conclusive determination that there was no bombings as opposed to the pharmacy was in a different place than he said it was? Well, the agency found that this was a material fabrication. And it was material because we could no longer believe that there was a pharmacy in existence. And so that's where the frivolous finding went to. It no longer existed. One more point with regards to whether a petitioner filed for asylum. In terms of his ineffective assistance of counsel claim, he's essentially arguing that petitioners, former counsels, should have foreseen or predicted that he would make this fabricated claim and have only applied for withholding. Well, that's gaming the system. And this court has already held that withdrawing your asylum application after it's been found frivolous does not prevent a frivolous finding. And so the court should do the same thing here. Otherwise, we would render the frivolous provision meaningless if we attach no consequences. Okay, so let me see. You think the application itself was false because it references a pharmacy, which then there is later evidence to show does not exist? Correct. All right. I get the sense that the panel wants a little bit more about the frivolous finding. So I just want to go over. He testified that his father's pharmacy was in Kesher Phila and that it was bombed three times and that he was in the pharmacy one of those times and that he worked in this pharmacy. Later he was asked by the immigration judge, well, did you ever live in a town called Seda? And he said, no, I only lived there two months. And the immigration judge said, well, did you live there for 18 years at any point? And he said, no, I never lived there for 18 years. So we have this very contradictory testimony. And the reason why it's significant is because it's a basic biographical fact. We all remember where we're from, where our father's employment was. That's something we all remember. You don't need an attorney's assistance to help you remember that. You don't need preparation to remember that. And so the fact that he got that wrong implies or necessarily implies that he created a story and he couldn't keep it straight. And that's why where the pharmacy was was significant. This business of when he filed his petition to reopen and he said he wasn't in withholding proceedings, was anything done with that by the BIA or anything? The board on appeal considered his argument about having only applied for withholding and cited Lazar for the proposition that withdrawing your asylum application or an untimely asylum application doesn't prevent a frivolous finding. Actually, I should have said with removal proceedings. There was a misstatement that he wasn't in removal proceedings at the time he applied for, I think. Adjustment. Adjustment. And was anything done with that in the administrative process? I don't believe so, and I think the reason is the frivolous finding trumps everything. Okay. He's not eligible for any relief if the frivolous finding is upheld. All right. Anything else, judges? Thank you. Thank you. Liz, you have three minutes for rebuttal. Well, first of all, I want to say that there never really was any conclusive proof that there were no bombings. It was just an inference of the immigration judge. And the immigration judge preventing the father from testifying at the second hearing, the ineffective assistance. Ms. Nahas, I mean, just makes the point. I'm sorry? Oh, I'm sorry. Yeah. I'm saying her mistake. Opposing counsel. Makes the point that his inability to get the city right discredits the whole story and gave the immigration judge a reasonable basis to say the entire thing is fabricated. So what would your response to that be? My response would be that after the first hearing, there was a board precedent decision called Matter of Y.L. that had a lot of law about immigration judges making frivolous findings and requiring notice and an opportunity to rebutt. Did the judge do all that in the first instance in that hearing? I mean, he said, you know, there are big consequences here. And he gave him multiple opportunities, didn't he, to explain himself in the first hearing? No, because Mr. Ayad had sent his father away, so his father could not come and corroborate or clarify the testimony. And the father came to the second remanded hearing and was ready, willing, and able per Matter of Y.L. to bring evidence about the frivolous finding, and he was not permitted to do so. And testimony is a very basic due process right. In fact, under Matter of Y.L., if somebody didn't have the evidence for rebutting a frivolous finding, they would ask for a continuance. If the judge says, I'm thinking of doing a frivolous finding because of X, Y, and Z, they could say, well, you know, I'm going to get a letter from that person, so I need two weeks, or I'm going to bring another person to testify. And so that's why the second remanded hearing, which was after Matter of Y.L., was very important for the frivolous finding. But they didn't ask for that kind of continuance at the first hearing, correct? No, because Matter of Y.L. had not been decided, and the judge wasn't required to make a statement, you know, saying you can even go and get more evidence to rebut a frivolous finding. And I just want to mention that, you know, the opposing counsel did not mention anything about Exhibit P. It's also not in the respondent's brief. And what I'm referring to is that a significant piece of objective evidence in support of the motion to reopen that the board itself said that it did not consider. That Exhibit P was an exhibit to a reply brief before the board. Are there rules about submitting evidence in reply briefs? No, there's no particular rule about it. Off the top of my head, I don't know what the date of the report was. It possibly might have come out after the first motion was filed, and I'm going to check on that and let you know, okay? If Exhibit P doesn't show material change in conditions, then it would not affect anything anyway. Well, I suppose that would be true, but it does show significant changes because the original hearings happened before Hezbollah was even in power in Lebanon. So there were extremely significant changes, you know, in 2011. And also I'm hoping that you send the case back either vacating the frivolous finding or perhaps to flesh that out more. And I hope that you ask the board to assign a new judge. The respondent's brief was basically silent on your authority, which you do have to ask for a new judge. All they said about it was that I could discuss with DHS counsel, the Department of Home, I could discuss with my adversary whether it would be appropriate to have a new judge. Well, first of all, if I was DHS, why would I want to have a new judge? Thank you. If colleagues have any further questions, thank you. That case will be submitted. The remaining cases will be submitted on briefs. And you may adjourn court. Thank you. The honorable court is now adjourned.